**Bruce Wayne CORBIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00158–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 1, 2000.

Decided Nov. 2, 2000.

Lew Dunn, Longview, for appellant.

C. Patrice Savage, Asst. Dist. Atty., William M. Jennings, Gregg County Dist. Atty., Longview, for State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

DONALD R. ROSS, Justice.

Bruce Corbin appeals from his conviction in a bench trial for the offense of possession of cocaine with intent to deliver. One felony enhancement was proven, and the court sentenced Corbin to thirty years' imprisonment and a $10,000.00 fine. Corbin contends, on state and federal constitutional grounds, that the trial court erred in overruling his motions to suppress evidence and to suppress his written statement.

Corbin was stopped for a traffic violation. The arresting officer, Deputy James Benson, testified that when Corbin got out of his car he smelled what he believed to be the odor of marihuana smoke. He also testified that Corbin did not appear intoxicated and that he did not conduct sobriety tests. Benson did a pat-down search, which revealed nothing except a device on

Corbin's back which Corbin explained was a back brace that he had to use following an injury. The officer asked Corbin if he had ever been arrested, and Corbin told him he had not. While Benson was preparing a warning citation, he received information that Corbin had been arrested a number of times, including numerous arrests for narcotics.

At that point, Benson searched Corbin more thoroughly and found a package of cocaine taped to Corbin's back. He then arrested Corbin. The next morning Corbin was interrogated by Melanie Thompson. She testified that she took his statement, typed it, and let him read it. However, on cross-examination she was confronted by the written document, which indicated that the document was read to Corbin because he was unable to read or write. Thompson then corrected her prior testimony and stated that she had forgotten the situation. She then testified that the document correctly reflected that the statement was read to him by a secretary.

Corbin first contends that the officer had no probable cause to initially stop and detain him because he had not violated any traffic law. To address this issue as formulated, we first look to see if there is evidence that he had violated a traffic law. The State relies on evidence of a violation of Tex.Transp.Code Ann. § 545.060(a) (Vernon 1999), which provides that, "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."

Officer Benson testified that at about 1:00 a.m. he saw Corbin driving at a rate of fifty-two miles per hour (in a sixty-five-mile-per-hour zone), cross over the line on the shoulder of the road, and travel across the white stripe for probably twenty feet, and then re-enter the lane of travel he had been in. He testified that he chose to stop Corbin based on the lateness of the night, the fact that Corbin was traveling over ten miles below the speed limit, and because Corbin had moved out of his lane.

■ Corbin argues that the initial traffic stop was a violation of both federal and state constitutional rights because there was no probable cause to support the stop. His federal argument is based on the Fourth Amendment, which ensures the right of the people to be secure against unreasonable searches and seizures. Under the Fourth Amendment, a temporary detention constitutes a seizure of a person within the meaning of the provision. To avoid constitutional entanglements, the stop must be reasonable in nature and based on a reasonable suspicion.

Similarly, under Article I, § 9 of the Texas Constitution and its companion statute, Tex.Code Crim.Proc.Ann. art. 1.06 (Vernon 1977), people are to be secure from all unreasonable seizures or searches.

■ In the analysis of a traffic stop, the question is whether the State proved the reasonableness of the stop. *See Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim. App.1986). An officer may stop and briefly detain a person for investigative purposes even in the absence of evidence rising to the level of probable cause if the officer has a reasonable suspicion supported by articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997), *citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ In determining whether the intrusion was reasonable, an objective standard is applied. The question is whether the facts available to the officer at the moment of the seizure or search would lead a person of reasonable caution to believe that the action taken was appropriate. *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim. App.1997). Because the facts are not in

dispute, we make a *de novo* determination of whether those facts give rise to the requisite "reasonable suspicion."

This Court has addressed several situations similar to the case before us, but are not directly on point. In *Zervos v. State,* 15 S.W.3d 146, 152 (Tex.App.—Texarkana 2000, pet. ref'd), the appellant was stopped because of the officer's "reasonable belief" that he had violated a traffic law. TEX. TRANSP.CODE ANN. § 545.104 (Vernon 1999) states that "[a]n operator shall use the signal ... to indicate an intention to turn, change lanes, or start from a parked position." The officer testified that Zervos changed lanes without signaling. This is in apparent violation of a mandatory statute, and on its face justifies the officer in having the requisite reasonable belief that a traffic law had been violated.

In *Powell v. State,* 5 S.W.3d 369 (Tex. App.—Texarkana 1999, pet. ref'd), *cert. denied,* —— U.S. ——, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000), as acknowledged by the majority opinion, the appellant did not dispute whether the officer had reasonable suspicion to stop him based on his observation that Powell failed to maintain a single lane of travel in violation of Section 545.060 of the Transportation Code. This Court opined in dicta that the officer nonetheless had the authority to stop and detain him for that violation. We went on to say that it was sufficient to show that the officer reasonably believed that a violation was in progress, citing as authority *Drago v. State,* 553 S.W.2d 375, 377–78 (Tex. Crim.App.1977); *Edgar v. Plummer,* 845 S.W.2d 452 (Tex.App.—Texarkana 1993, no writ); and *Valencia v. State,* 820

S.W.2d 397 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

Each of the cases we cited involved conduct that violated a mandatory statute. In *Drago,* the defendant turned out of a wrong lane in violation of posted signs regulating his actions. In *Plummer,* a civil suit, the officer testified that he had stopped the plaintiff because he was speeding (in violation of a mandatory statute) and also because he drove over a shoulder stripe. In *Valencia,* the defendant was stopped for blocking traffic and swerving across the road into oncoming traffic, both of which violate mandatory statutes.[1]

To the extent these cases rely on the "failure to maintain a single lane" statute (Transportation Code § 545.060(a)) as justification for the stops, such justification may have been overstated. This statute does not provide that any movement over a dividing line between lanes or between a lane and a shoulder is necessarily a criminal offense. Rather, this statute presumes a certain degree of common sense will be applied to the review of a driver's actions by requiring that a driver shall drive "as nearly as practical entirely within a single lane ...." *and* that he may not move from the lane unless the movement can be made safely. TEX.TRANSP.CODE ANN. § 545.060(a).

The application of this particular statute was discussed in detail by the Austin Court of Appeals in *Hernandez v. State,* 983 S.W.2d 867, 871 (Tex.App.—Austin 1998, pet. ref'd).[2] In that case, the court recognized that the statutory language shows an intent to create a violation only

---

1. That case goes on to opine that a person may be arrested for failing to wear a seat belt, a holding that (in another case) is presently on review before the United States Supreme Court. The Fifth Circuit held in *Atwater v. Lago Vista,* 165 F.3d 380 (5th Cir.1999), that despite the existence of a Texas statute arguably authorizing arrest, a police officer may not arrest for such a minor violation as the failure to wear a seat belt. The court granted a rehearing en banc and reversed the panel decision at 195 F.3d 242. The United States

Supreme Court has granted certiorari. —— U.S. ——, 120 S.Ct. 2715, 147 L.Ed.2d 981 (2000).

2. *See also Ehrhart v. State,* 9 S.W.3d 929, 930–31 (Tex.App.—Beaumont 2000, no pet.); *State v. Arriaga,* 5 S.W.3d 804, 806 (Tex. App.—San Antonio 1999, pet. ref'd); *State v. Tarvin,* 972 S.W.2d 910 (Tex.App.—Waco 1998, pet. ref'd).

when the vehicle fails to stay within its lane and the movement is not safe or is not made safely.[3] The court's decision is buttressed by the vagueness of the requirement that the driver drive within a single lane "as nearly as practical," which is language notably different than that in the mandatory statutes mentioned above. As pointed out in both *Hernandez* and *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.), however, this does not give a driver free rein to weave all over a road in the absence of other traffic, because although not an inherently illegal act, when an officer observes other factors, the officer may stop the driver based on a reasonable suspicion that the driver has lost control of his mental or physical faculties.

■ In this case, the stop was nominally for a traffic violation consisting of a driver crossing over a side stripe for twenty feet. The officer testified that he observed the car make this movement at a speed that was well below the posted limit. While this testimony established that the driver did not drive "entirely within a single lane," it did not establish that this movement was made unsafely. We conclude that the officer could not reasonably rely on Section 545.060(a) to justify this stop. However, the officer explained that other factors went into his decision to stop the car. Based on a recent decision by the Texas Court of Criminal Appeals, we believe that at least one of those factors justified the officer's stop of Corbin's car.

The Texas Court of Criminal Appeals has recently recognized the existence of the community caretaking function in Texas. The court has decided that "[a]s part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person-given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex.Crim.App.1999). In that case, the court set out a nonexclusive list of four factors it believed would aid in determining whether a police officer acted reasonably in stopping an individual to determine if that person needed assistance:

(1) the nature and level of the distress exhibited by the individual;

(2) the location of the individual;

(3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

(4) to what extent the individual—if not assisted—presented a danger to that person's self or to others.

*Wright,* 7 S.W.3d at 152.

The officer in this case testified that he stopped the car to determine whether Corbin was sleepy or intoxicated and therefore was not safe to be driving. He stated that "at this time of the morning I was concerned that Mr. Corbin had possibly been drinking or was falling asleep. Coupled with the fact that he left his lane of travel, he was traveling at a speed of, I believe, 52 miles per hour in a 65–mile–per–hour speed zone, which is quite a whole lot less." He also testified that if Corbin had left his lane of travel "shortly after he did the first time," he could have collided with concrete columns at an overpass.

In applying the factors set out by *Wright,* in this case the officer saw Corbin drift over a side stripe for twenty feet and while following him for approximately a mile before catching up to him saw no other variations from the norm. The nature and level of distress exhibited by the individual was thus very low. The location of the individual was on a somewhat isolated stretch of interstate highway, which would suggest the unavailability of immediate assistance should any be required. This factor rates somewhat higher, but

---

3. *Atkinson v. State,* 848 S.W.2d 813, 815 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (holding that the elements of an offense under this statute include both failure to operate within a marked lane and moving from that lane without first ascertaining that the movement can be made with safety).

still fairly low. The individual was alone in the vehicle, and thus had no access to other help either in remaining awake or being assisted if necessary. Finally, as we noted above, the officer testified that had the driver left his lane shortly after the time that he did, he could have possibly hit concrete columns at a particular overpass.

The evidence could be taken to show that the driver was having difficulty staying awake. Applying the factors set out in *Wright,* we conclude that given the totality of the circumstances, the officer could have reasonably believed that the driver was in need of help and stopped the vehicle to make this determination. Therefore, the stop was reasonable pursuant to the officer's exercise of the community caretaking function. Corbin's contentions to the contrary are overruled.

Corbin next contends that the trial court violated his federal and state constitutional rights by admitting his statement. He contends that the court's determination was in error because of the dichotomy between the testimony of Melanie Thompson on direct examination and on cross-examination. Thompson interrogated Corbin and took a statement from him which she transcribed. On direct examination she testified that she let Corbin read the statement and determine its correctness. On cross-examination, she reviewed the last page of the statement and then corrected her testimony. She stated that she had forgotten that in this case the defendant was unable to read. She then testified that Corbin had not read the transcription, but instead a secretary in the office had read the statement to him and he had initialed each paragraph as she read it.

■■ At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses, and our review of the judge's ruling is limited to a determination of whether the trial court abused its discretion. The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Hernandez v. State,* 957 S.W.2d 851 (Tex.Crim.App.1998); *see Guzman,* 955 S.W.2d at 89.

■ In this case, the witness did change her testimony on reviewing the written document and realizing that she had made a mistake in her testimony. It was within the purview of the trial court as the finder of fact in this proceeding to determine in which instance her testimony was correct. As stated above, we must defer to the trial court's determination where its decision is based on the credibility and demeanor of the witness. Error has not been shown.

■ Corbin also contends that the taking of his statement violated Article I, § 10 of the Texas Constitution and TEX.CODE CRIM.PROC.ANN. art. 38.21 (Vernon 1977), art. 38.22 (Vernon 1977 & Supp.2000). In a brief argument under that contention he complains that the State failed to prove that Corbin knowingly, intelligently, and voluntarily waived the rights enumerated in Article 38.22, but does not set out any particular failing in this regard. On review of the record, we find no argument in this respect before the trial court and do not find where any contention under the statute was presented to the trial court for review. Error is not preserved for review if it varies from the objection. TEX. R.APP.P. 33.1; *Martinez v. State,* 22 S.W.3d 504, 507 (Tex.Crim.App.2000). The contention of error is overruled.

The judgment is affirmed.