Rory EHRHART, Appellant,

v.

The STATE of Texas, Appellee.

No. 09-99-462CR.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 24, 2000.

Decided Feb. 16, 2000.

Rehearing Overruled March 9, 2000.

Roger Neil Moss, Lufkin, for Appellant.

Clyde M. Herrington, Dist. Atty., Albert J. Charanza, Jr., Asst. Dist. Atty., Lufkin, for State.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

## OPINION

BURGESS, Justice.

Rory Ehrhart pleaded guilty to third degree felony possession of a controlled substance. The trial court sentenced Ehrhart to three years' confinement in the Texas Department of Criminal Justice—Institutional Division. Ehrhart appeals, claiming the trial court erred in denying his motion to suppress. *See* TEX. R. APP. P. 25.2(b)(3)(B).

Ehrhart argues the initial stop of his car was unlawful. Officer Holley testified he stopped Ehrhart for failing to maintain a single marked lane. According to Officer Holley, Ehrhart's car touched the solid white line on the right-hand side and crossed the white line on the left-hand side. Officer Saucier testified he observed Ehrhart's vehicle touch the solid white line twice, but only on the right-hand side. It is Ehrhart's contention that failure to maintain a single marked lane is not a traffic offense unless it done in an unsafe manner. Because there is no evidence Ehrhart's driving endangered other cars, he contends, the State did not establish a traffic violation occurred justifying the stop.

■ The State argues the stop was justified under the "community caretaking" exception recognized by this court in *Cunningham v. State*, 966 S.W.2d 811 (Tex. App.—Beaumont 1998, no pet.)(holding that "when a police officer has a demonstrable reason to believe that a particular individual may need assistance, a tempo-rary stop is justified for the limited purpose of determining if assistance is appropriate"). However, in the present case there is no evidence that Officer Holley believed, reasonably or otherwise, that Ehrhart needed assistance. Officer Holley testified he stopped the vehicle only for the traffic violation of failing to maintain a single lane of traffic. No other explanation was given for the stop except for the testimony of Officer Saucier that they "didn't recognize the vehicle" as "being a local vehicle," and "not from around here."

■ The State cites *Davis v. State*, 923 S.W.2d 781, 788 (Tex.App.—Beaumont 1996), for the proposition that failure to maintain a single lane gives rise to reasonable suspicion that the driver is intoxicated. We first note the State erroneously cites *Davis* as having no subsequent petition history but *Davis* was reversed by the Texas Court of Criminal Appeals. *Davis v. State*, 947 S.W.2d 240 (Tex.Crim.App. 1997). *Davis* is unlike the present case. The Court of Criminal Appeals did not consider the issue of the reasonableness of the stop as it was not contested by the parties. *Id.* at 245. Furthermore, the court noted the defendant was stopped for suspicion of driving while intoxicated. *Id.* Likewise, this court in its original opinion noted the officers testified the defendant's weaving within the lane caused them to believe he was driving while intoxicated or simply tired. *Davis*, 923 S.W.2d at 788. Here, there is no testimony by either officer that they suspected Ehrhart was intoxicated.

The State concedes in its brief that Ehrhart's failure to maintain a single lane is "not an inherently illegal act." Neither Officer Holley nor Officer Saucier testified that Ehrhart's "weaving" was unsafe or dangerous. As the record contains no evidence the movement was unsafe or dangerous, an actual traffic violation did not occur. *See Hernandez v. State*, 983 S.W.2d 867, 870 (Tex.App.—Austin 1998, pet. ref'd); *see also Atkinson v. State*, 848 S.W.2d 813, 815 (Tex.App.—Houston [14th

Dist.] 1993, pet. ref'd) (one element of failure to drive in a single marked lane is that the driver moves without first ascertaining it can be made with safety). Thus, there was no basis for the stop. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim.App.1992) (holding that "[a]s long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person for that violation"). As the consent to the search is a fruit of the illegal stop, the evidence obtained in the search should have been suppressed. *See Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim.App.1992). Accordingly, the trial court abused its discretion in denying Ehrhart's motion to suppress. Ehrhart's sole issue is sustained. The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

In little over a year, the Court of Criminal Appeals has twice bestowed enlightenment upon this Court in the form of complete abrogation or significant revision of decades of precedent. *See Young v. State*, 8 S.W.3d 656 (Tex.Crim.App.2000); and *Leday v. State*, 983 S.W.2d 713 (Tex.Crim. App.1998). It is therefore with extreme trepidation that I dredge up, as the bases of this dissent, law that has been part of Texas jurisprudence for a significant number of years.

The first axiom recognizes that the law requires a suppression ruling be *sustained* if it can be upheld on *any* valid theory *regardless* of whether the State argued it at trial or on appeal, *Lewis v. State*, 664 S.W.2d 345, 347 (Tex.Crim.App.1984), and *regardless* of the fact that the trial judge gave the wrong reason for his decision. *See Villalobos v. State*, 999 S.W.2d 132, 134 (Tex.App.—El Paso 1999, no pet.). The second axiom was ably set out in *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd), as follows:

[A]t the suppression hearing the State had the burden of proving the reason-

ableness of the stop. *See Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim. App.1986); . . .

A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997).

[T]he reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

*Woods*, 956 S.W.2d at 38. The court of criminal appeals has also stated the standard as follows: "In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim.App.1997). Because the historical facts in the present case are not in dispute, we make a *de novo* determination of whether those facts give rise to a reasonable suspicion of criminal activity. *See Loesch v. State*, 958 S.W.2d 830, 832 (Tex.Crim.App.1997); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997).

In *Hernandez*, the State raised two possible theories for the detention of the defendant, "reasonable suspicion of driving while intoxicated," and "reasonable suspicion of traffic offense." *Id.* at 870. The majority in our case relies on the Austin Court's analysis with regard to reasonable suspicion of traffic offense. I take issue

with the fact that the majority ignores the possibility that Officer Holley stopped appellant for suspicion of D.W.I., taking into account the following exchange between Officer Holley and appellant's trial counsel:

Q.[Trial Counsel] Do you think perhaps that Mr. Ehrhart could have been wondering why you were stopping him?

A.[Officer Holley] I advised Mr. Ehrhart why he had been stopped and felt that the reason for stopping was to further investigate why he was failing to maintain a single marked lane.

Q. Well, he wasn't intoxicated, was he?

A. No.

Q. You didn't smell any alcohol on him?

A. No, sir.

Q. You didn't say anything about him being unsteady on his feet or had the odor of alcohol about him; right?

A. He had stated that he was tired.

Q. Well, did you observe him to be tired?

A. He—— just from training and experience, he looked like he may be somewhat tired from being on the road quite a bit or something.

From the fact that trial counsel was inquiring of Officer Holley as to whether or not appellant appeared to be intoxicated once Holley encountered appellant, trial counsel was virtually conceding that the stop was a reasonable one so that Holley could investigate whether or not the reason for appellant's failure to maintain a single marked lane stemmed from appellant possibly being intoxicated. The Hernandez Court found no reasonable suspicion of D.W.I. and rightly so because the quoted testimony did not even hint at intoxication being a factor in making the stop. In our case, regardless of the fact that a traffic offense may or may not have occurred, I believe that the testimony at least gives rise to a reasonable suspicion of the possibility that appellant could have been intoxicated, and that the subsequent temporary detention of appellant was justified. Because the majority focuses only on the reasonable suspicion of the existence of a traffic offense, and finds no evidence of an offense, I must dissent to their reversal and remand. I would affirm the conviction.