**Donald Ray BASS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00225–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Oct. 24, 2001.

Decided Dec. 21, 2001.

Clement Dunn, Longview, for appellant.

Andy Porter, Asst. Dist. Atty., Longview, for state.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Donald Ray Bass was convicted of possessing more than four ounces but less than five pounds of marihuana and sentenced to one year of imprisonment. A deputy sheriff stopped Bass as Bass was driving on Interstate Highway 20 near

Longview. After obtaining Bass' consent to search his vehicle, the officer found marihuana in the trunk and arrested him. On appeal, Bass presents one issue for review: whether the trial court erred in overruling his motion to suppress the evidence on the basis the traffic stop was illegal. For the following reasons, we reverse and render a judgment of acquittal.

■■■ We review the trial court's ruling on a motion to suppress by an abuse of discretion standard. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimonies. We view the evidence in the light most favorable to the trial court's ruling, *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999), and afford almost total deference to the trial court's determination of historical facts which the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We review *de novo* the court's application of the law of search and seizure to those facts. *Ross,* 32 S.W.3d at 856. Because no findings of fact or conclusions of law were filed, we will assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. If the judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Id.* at 855–56.

■■■ The officer stopped Bass without a warrant, and therefore the State bore the burden at the suppression hearing of demonstrating that the stop was reasonable within the totality of the circumstances. *See Hulit v. State,* 982 S.W.2d 431, 436 (Tex.Crim.App.1998); *Russell v. State,* 717 S.W.2d 7, 10 (Tex.Crim.App. 1986). To briefly stop and detain an individual for investigative purposes, an officer need only possess reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968). The officer stopped Bass for what he believed was a traffic violation. To justify a traffic stop, the officer must have observed specific objective, articulable facts which, in light of the officer's experience and personal knowledge, together with inferences from those facts, would warrant a reasonable person to believe a traffic violation had occurred. *See Davis v. State,* 947 S.W.2d 240, 242–43 (Tex.Crim.App.1997); *Valencia v. State,* 820 S.W.2d 397, 399 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd).

■ Bass' argument on appeal is that, even accepting all of the officer's testimony as true, the facts presented do not prove the reasonableness of the stop. Bass contends the sole issue in this case is whether the officer articulated specific facts available to him at the time of the incident to give rise to a reasonable suspicion that Bass had committed a traffic offense, i.e., a violation of Section 545.060(a) of the Texas Transportation Code pertaining to driving within a single lane.[1] The State contends there were two bases for the stop. One was Bass' failure to drive within a single lane. Another was to determine whether Bass was intoxicated or fatigued. Although the State on appeal fails to present

---

1. TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1999) provides:
 (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:

 (1) shall drive as nearly as practical entirely within a single lane; and
 (2) may not move from the lane unless that movement can be made safely.

substantive argument on the latter basis, we will address both bases.

The officer's testimony about his observations of Bass' driving was as follows:

Q [by Prosecutor] Do you remember coming in contact with someone you later knew as Donald Ray Bass?

A Yes, sir.

Q How did that contact come about?

A I was eastbound on I–20, headed into 31. It was getting close to shift change when I noticed a vehicle in front of me was swerving within its lane.

Q Okay. Once you had noticed him swerving, did he ever go outside his marked lanes?

A Yes, sir, he did.

Q And do you remember how many times?

A No, sir, I do not.

Q Okay. Were there other vehicles around you at that time?

A Yes, sir. There was traffic on I–20.

Q Okay. Once you saw this person failing to maintain a single lane, what did you do next?

A I stopped the vehicle.

Q All right. Do you remember where you stopped it?

A It was just west of the 31 exit that runs between Longview and Kilgore.

. . . .

Q ... And what took place at the back of the vehicle?

A I began talking to the individual, just, you know, trying to find out if he was tired, or intoxicated, or what might be causing him to swerve within his lanes.

. . . .

Q ... How long did you follow him?

A I had been following the subject from [Highway] 135. New 135 to that area there is approximately two and a half miles—three miles.

Q All right. And that's when you saw him failing to maintain a single lane?

A Yes, sir.

Q And do you know—were y'all being passed by vehicles, or was he speeding, were y'all passing vehicles, or do you know?

A We were not speeding, and I can't recall whether we were being passed by vehicles or not.

Q But you know that there were other vehicles around on the highway?

A Oh, yes, sir. Yes, sir.

. . . .

Q [by Defense Counsel] Was the basis for your stop [sic] the Defendant in this case—his failure to maintain a single lane?

A Yes, sir.

. . . .

Q Officer, did you observe any car trying to pass my client at the time that he attempted or actually changed lanes?

A In the distance that we traveled, yes, sir. There were several vehicles that passed us.

Q All right. Did you observe any incident that came close to causing an accident or was unsafe in any manner in that regard?

A No, sir, I guess not.

We first discuss the issue of whether this testimony reveals specific, articulable facts sufficient to give rise to a reasonable suspicion that Bass was intoxicated. The officer testified Bass was swerving within his lane. He followed Bass for two and one-half to three miles. On appeal, the State seems to assume by inference that, because the officer followed Bass for about three miles, he observed Bass swerving for

that distance. The officer said Bass was not speeding.

Police officers may justifiably make inferences from visual observations based on their experiences in law enforcement. Here, however, the officer did not testify that, based on his experience, he subjectively[2] suspected Bass of being intoxicated. Nor did he testify that anything about the objective circumstances—time, location, the vehicle's movement, etc.—would have led a reasonable officer to suspect Bass was intoxicated, except Bass' swerving. From the testimony, we conclude the State failed to carry its burden to show articulable facts that demonstrate the reasonableness of the stop on the basis of a suspicion that Bass was intoxicated.

 The second potential basis for the traffic stop was the officer's observance of what he believed was a traffic violation. It is well settled that a peace officer is empowered to stop motorists when that officer reasonably believes he or she has observed a traffic violation. *Valencia*, 820 S.W.2d at 399. Specifically, the State alleges the officer reasonably believed Bass violated Section 545.060(a) of the Transportation Code. This statute provides that an operator on a roadway divided into two or more clearly marked lanes for traffic (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely. Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999). In other words, a violation of Section 545.060(a) occurs only when a vehicle fails to stay within its lane and that movement is not safe or is not made safely. *State v. Cerny*, 28 S.W.3d 796, 800 (Tex. App.-Corpus Christi 2000, no pet.); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.-Austin 1998, pet. ref'd); *see also Aviles v. State*, 23 S.W.3d 74, 77 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

The issue before us is whether the officer had a reasonable suspicion, based on articulable facts, that Bass failed to keep his vehicle within its lane and did so in an unsafe manner. We find the State failed to meet its burden because it failed to show articulable facts to demonstrate the reasonableness of the stop on the basis of

2. On a motion for rehearing, the State contends this case is inconsistent with our holding in *Corbin v. State*, 33 S.W.3d 90 (Tex.App.-Texarkana 2000, pet. granted). We disagree. The State contends we held that, in determining whether a traffic stop is reasonable, an objective standard is used. This was not our holding in *Corbin*. We stated, "In determining whether the intrusion was reasonable, an objective standard is applied. The question is whether the facts available to the officer at the moment of the seizure or search would lead a person of reasonable caution to believe that the action taken was appropriate." *Id.* at 92.

The State also contends this case is factually similar to *Corbin*. In *Corbin* we found the officer could not reasonably rely on Section 545.060(a) to justify the stop, just as we have in this case. We did uphold the stop in *Corbin* based on the community caretaking function of law enforcement in Texas. The State

has waived the community caretaking argument in this case by failing to raise it at the trial court level or on appeal. Even if the State had properly made this argument, the facts of *Corbin* and this case are distinguishable. In *Corbin*, the officer testified he stopped the car to determine whether Corbin was sleepy or intoxicated and provided articulable facts to support his reasonable belief that Corbin might be in need of assistance. *Id.* at 94. In *Corbin*, the totality of the circumstances supported the officer's reasonable suspicion. Corbin was driving alone on an isolated stretch of interstate highway going twelve miles under the speed limit when he left his lane and traveled on the shoulder for about twenty feet. The testimony also indicated that, had Corbin left his lane shortly after he did, he could have possibly hit concrete columns at a particular overpass. In this case, the testimony does not provide any such supporting articulable facts.

a suspicion Bass violated Tex. Transp. Code Ann. § 545.060(a).

■ There is no testimony from the officer that Bass' lane change occurred in an unsafe manner. The officer did not articulate facts sufficient to support a reasonable suspicion to detain Bass. *See Cerny*, 28 S.W.3d at 801. When asked, "Did you observe *any* incident that came *close* to causing an accident or was *unsafe* in any manner in that regard," the officer answered, "No, sir, I guess not." (Emphasis added.) The officer testified he saw no unsafe behavior. Though the officer testified that in the distance they traveled several vehicles passed them, he never testified that when the lane change occurred there were cars passing Bass or that Bass' lane change was unsafe. *See Corbin v. State*, 33 S.W.3d 90, 94 (Tex.App.-Texarkana 2000, pet. granted) (testimony established driver failed to maintain single lane, but failed to establish movement made unsafely).

Bass properly relies on *Hernandez*, 983 S.W.2d 867, and similar cases. In *Hernandez*, as in this case, the defendant made only one movement out of his lane, and the officer testified there was nothing about that particular movement that was unsafe or improper. In this case, we have no testimony Bass crossed out of his lane more than once or that when he did so it was in an unsafe manner. The relevant testimony on this point was as follows:

Q Okay. Once you had noticed him swerving, did he ever go outside his marked lanes?

A Yes, sir, he did.

Q And do you remember how many times?

A No, sir, I do not.

The testimony indicates that, once the officer saw Bass failing to maintain a single lane he pulled him over. There is no indication regarding the number of times Bass actually left his lane of traffic. There is nothing in the record to indicate this lane change was any less safe than any other lane change made on highly traveled highways.

Other cases on which Bass relies involve momentary "drifting" of a car over the line when there were no other circumstances showing such a momentary movement was unsafe. In *Ehrhart*, the court of appeals reversed the trial court's denial of a motion to suppress. *Ehrhart v. State*, 9 S.W.3d 929, 931 (Tex.App.-Beaumont 2000, no pet.). The court found there was no testimony from the officers that Ehrhart's "weaving" was unsafe or dangerous. *Id.* at 930. "As the record contains no evidence the movement was unsafe or dangerous, an actual traffic violation did not occur." *Id.; see also Hernandez*, 983 S.W.2d at 870; *Atkinson v. State*, 848 S.W.2d 813, 815 (Tex.App.-Houston [14th Dist.] 1993, no pet.). Because there is no evidence in this case the lane change was unsafe, there was no actual traffic violation and no reasonable suspicion, based on articulable facts, Bass failed to keep his vehicle in its lane and did so in an unsafe manner.

We find the trial court abused its discretion in overruling Bass' motion to suppress. For all of the reasons stated, we reverse and render a judgment of acquittal.

Dissenting opinion by Chief Justice CORNELIUS.

WILLIAM J. CORNELIUS, Chief Justice, dissenting.

To briefly stop and detain an individual for investigative purposes, an officer need only have reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1,

29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). The deputy stopped Bass for what he reasonably believed was a traffic violation. To justify a traffic stop, the officer must have observed specific objective, articulable facts which, in light of the officer's experience and personal knowledge, and together with inferences from those facts, would warrant a reasonable person to believe that a traffic violation had occurred. *Valencia v. State,* 820 S.W.2d 397, 399 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd).

Bass' argument on appeal is that, even accepting all of the deputy's testimony as true, the facts presented do not prove the reasonableness of the stop. Bass contends the sole issue in this case is whether the deputy articulated specific facts available to him at the time of the incident to give rise to a reasonable suspicion that Bass had committed a traffic offense, i.e., a violation of Section 545.060(a) of the Texas Transportation Code pertaining to driving within a single lane.[3] The State contends there were two bases for the stop. One was Bass' failure to drive within a single lane. Another was to determine whether Bass was intoxicated or fatigued.

The deputy's testimony about his observations of Bass' driving was as follows:

Q [by Prosecutor] Do you remember coming in contact with someone you later knew as Donald Ray Bass?

A Yes, sir.

Q How did that contact come about?

A I was eastbound on I–20, headed into 31. It was getting close to shift change when I noticed a vehicle in front of me was swerving within its lane.

Q Okay. Once you had noticed him swerving, did he ever go outside his marked lanes?

A Yes, sir, he did.

Q And do you remember how many times?

A No, sir, I do not.

Q Okay. Were there other vehicles around you at that time?

A Yes, sir. There was traffic on I–20.

Q Okay. Once you saw this person failing to maintain a single lane, what did you do next?

A I stopped the vehicle.

Q All right. Do you remember where you stopped it?

A It was just west of the 31 exit that runs between Longview and Kilgore.

. . . .

Q ... And what took place at the back of the vehicle?

A I began talking to the individual, just, you know, trying to find out if he was tired, or intoxicated, or what might be causing him to swerve within his lanes.

. . . .

Q ... How long did you follow him?

A I had been following the subject from [Highway] 135. New 135 to that area there is approximately two and a half miles—three miles.

Q All right. And that's when you saw him failing to maintain a single lane?

A Yes, sir.

Q And do you know—were y'all being passed by vehicles, or was he speed-

---

**3.** Tex. Transp Code Ann. § 545.060(a) (Vernon 1999) provides:

 (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:

 (1) shall drive as nearly as practical entirely within a single lane; and

 (2) may not move from the lane unless that movement can be made safely.

ing, were y'all passing vehicles, or do you know?

A We were not speeding, and I can't recall whether we were being passed by vehicles or not.

Q But you know that there were other vehicles around on the highway?

A Oh, yes, sir. Yes, sir.

. . . .

Q [by Defense Counsel] Was the basis for your stop [sic] the Defendant in this case—his failure to maintain a single lane?

A Yes, sir.

. . . .

Q Officer, did you observe any car trying to pass my client at the time that he attempted or actually changed lanes?

A In the distance that we traveled, yes, sir. There were several vehicles that passed us.

Q All right. Did you observe any incident that came close to causing an accident or was unsafe in any manner in that regard?

A No, sir, I guess not.

I conclude that the evidence shows the officer had a reasonable belief, supported by articulable, objective facts, that Bass committed a traffic violation. It is well settled that a peace officer is empowered to stop motorists when he reasonably believes he has observed a traffic violation. *Valencia v. State*, 820 S.W.2d at 399. Specifically, the State alleges that the deputy reasonably believed Bass violated Section 545.060(a) of the Transportation Code. This statute provides that an operator on a roadway divided into two or more clearly marked lanes for traffic (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely. TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1999). In other words, a violation of

Section 545.060(a) occurs only when a vehicle fails to stay within its lane when such movement cannot be made safely. *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.-Austin 1998, pet. ref'd); *see also State v. Cerny*, 28 S.W.3d 796, 800 (Tex. App.-Corpus Christi 2000, no pet.); *Aviles v. State*, 23 S.W.3d 74, 77 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

The issue before us is whether the officer had a reasonable suspicion, based on articulable facts, that Bass failed to keep his vehicle within its lane when it was unsafe to do so. The time of the incident given on the offense report was 11:45 p.m. In addition to the testimony described above, the officer testified there were other vehicles around them and that several vehicles had passed them. It is true that the officer did not testify in so many words that Bass moved out of his lane of traffic when it was unsafe to do so. However, he did testify that Bass was swerving, that cars had passed them both, and that there was traffic around them. I conclude that a reasonable officer observing a driver "swerving" between lanes on a heavily traveled interstate highway late at night when cars are passing the vehicle and traffic is around him, may reasonably believe that the driver is failing to maintain a single lane when it is unsafe to do so.

The officer did testify on cross-examination that he did not see any incident that came close to causing an accident or that was unsafe in any manner. However, that testimony may be reasonably construed to mean that the officer did not see a near accident or incident. It is not necessary to actually see an accident or even to see a near accident to know that a driver is driving in an unsafe manner. Nor is it necessary for the officer to use the magic words "unsafe manner" so long as the articulable facts he observes justify a reasonable belief that the driver is moving out

of the lane when it is unsafe to do so. Moreover, the trial court was authorized to resolve any possible inconsistencies in the officer's testimony.

Bass relies on *Hernandez v. State*, 983 S.W.2d 867 (Tex.App.-Austin 1998, pet. ref'd), and similar cases. These cases are distinguishable from our case. For example, in *Hernandez*, the defendant made only one movement out of his lane, and the officer testified there was nothing about that particular movement that was unsafe or improper. Other cases on which Bass relies involve the momentary "drifting" of a car over the line when there were no other circumstances showing that such a momentary movement was unsafe. Other cases on which Bass relies, such as *State v. Cerny*, 28 S.W.3d 796 (Tex.App.-Corpus Christi 2000, no pet.); *State v. Arriaga*, 5 S.W.3d 804 (Tex.App.-San Antonio 1999, pet. ref'd); and *State v. Tarvin*, 972 S.W.2d 910 (Tex.App.-Waco 1998, pet. ref'd), are driving while intoxicated cases.

We must remember that it is not necessary for the State to prove there was an actual violation of the law. It is only necessary that the officer have specific, objective facts he observes that lead him to reasonably believe a traffic violation has occurred or is occurring. *Drago v. State*, 553 S.W.2d 375 (Tex.Crim.App.1977); *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.-Texarkana 1999, pet. ref'd); *Edgar v. Plummer*, 845 S.W.2d 452 (Tex.App.-Texarkana 1993, no pet.); *Valencia v. State*, 820 S.W.2d 397.

I conclude that the trial court properly overruled Bass' motion to suppress. Therefore, I would affirm the judgment.