

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00004-CR

_____

KENDRICK DION JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 26353

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Kendrick Dion Johnson was charged with possession of more than four but less than 200 grams of cocaine with intent to deliver. Prior to trial, Johnson filed a motion to suppress evidence, which the trial court denied. Johnson pled guilty and was sentenced to forty years' imprisonment. Johnson appeals the trial court's denial of his motion to suppress evidence. We affirm the judgment of the trial court.

I.    FACTS

On the evening of September 19, 2009, a crowd of over 100 people assembled for a block party on Wellington Street in Greenville. Officers Larry Henderson and Justin Meeks of the Greenville Police Department were there on foot patrol to ensure safety in the public areas.[1] As the officers patrolled the area, they saw a vehicle operated by Johnson turn north onto Wellington Street from Borland Street. The vehicle was being driven left of center and ultimately parked on the left side of the road, obstructing a driveway. Henderson and Meeks approached the vehicle with the purpose of addressing what they determined were traffic violations. As Henderson approached the driver's side window, Johnson had just turned off the engine. As Henderson was talking with Johnson about the traffic violations, Meeks, who was standing on the passenger's side of the vehicle, signaled to Henderson to look at Johnson's hands. Henderson observed that Johnson was holding car keys in his right hand and was holding a plastic baggie in his left hand.

---

[1] In the past, gatherings in this area resulted in obstruction of the roadway, public consumption of alcohol, and illegal drug sales.

When Henderson asked Johnson what was in his hand, Johnson stuffed the baggie behind him. Meeks could clearly see Johnson holding a large, clear baggie in his left hand containing multiple small green baggies. When Johnson attempted to hide the baggie, Henderson believed he was concealing something illegal or reaching for a weapon. Johnson was taken from the vehicle and handcuffed. A plastic baggie containing twenty-three individual baggies filled with powder cocaine was located in the back waistline of his shorts. Johnson was then arrested.

Johnson filed a motion to suppress evidence of the cocaine, alleging the initial traffic stop was unlawful. At the suppression hearing, Henderson and Meeks both testified that they approached Johnson's vehicle because it was parked on the wrong side of the road and was blocking a driveway. Both stated that the vehicle was driven left of center before it was parked and that it was parked more than eighteen inches from the curb. Both the State and Johnson argued over whether the officers had reasonable suspicion to make the stop. *See Terry v. Ohio*, 392 U.S. 1 (1968).

## II.    ANALYSIS

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility.

*Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 985 S.W.2d at 89. When the trial court makes explicit fact-findings, as in this case, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact-findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review de novo the trial court's legal ruling unless the trial court's fact-findings are also dispositive of the legal ruling. *Id.*

Here, the trial court found that:

1. On September 19, 2009, Kendrick Dion Johnson was stopped by Greenville Police Officers for traffic violations, namely: parking in front of a driveway.

2. Based upon the aforementioned traffic violation that led to contact with Kendrick Dion Johnson, Greenville Police Officers discovered contraband in plain-view in Kendrick Johnson's automobile.

Here, both parties analyze the encounter between Henderson, Meeks, and Johnson as a "traffic stop." Johnson contends the trial court erred in denying his motion to suppress because no traffic violation occurred. Therefore, Johnson maintains the State failed to demonstrate the reasonableness of the stop, and evidence of the cocaine seized as a result of the stop should be

4

suppressed. Johnson does not address the issue of police-citizen interactions or the fact that the cocaine was in plain view in his hand.

The State maintains that because the officers reasonably believed a traffic violation occurred, the stop was justified. Therefore, the trial court did not abuse its discretion in refusing to suppress evidence of the cocaine discovered in plain view in Johnson's hand.[2] When a warrantless search and seizure is undertaken, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Henderson and Meeks stopped Johnson for what they believed to be three separate traffic violations. To justify a traffic stop, the officer must have observed specific objective, articulable facts which, in light of the officer's experience and personal knowledge, together with inferences from those facts, would warrant a reasonable person to believe a traffic violation occurred. *Bass v. State*, 64 S.W.3d 646, 648 (Tex. App.—Texarkana 2001, pet. ref'd).

Because the trial court's findings indicate the traffic violation for which Johnson was stopped was that of parking in front of a driveway, we do not address the other, alleged traffic

---

[2]The State dedicates one paragraph of its brief to the proposition that reasonable suspicion was not required because police officers are free to approach individuals without probable cause or reasonable suspicion in order to ask questions. This issue was raised in the trial court, and the trial court did not enter a finding of fact or conclusion of law on this issue. Likely that was because the officers testified they approached Johnson due to their observation of violations of law, not to ask questions. Since it was not addressed in the evidence or the trial court's ruling, we will not address this issue. *See* Tex. R. App. P. 33.1.

violations.[3]   Johnson contends that his car was not parked prior to being stopped; rather, Johnson alleges that he was attempting to back his car into the driveway when Henderson and Meeks approached.   Section 545.302(b)(1) of the Texas Transportation Code provides:

> (b)    An operator may not, except momentarily to pick up or discharge a passenger, stand or park an occupied or unoccupied vehicle:
>
> (1)    in front of a public or private driveway; . . . .

TEX. TRANSP. CODE ANN. § 545.302(b)(1) (West 2011).

At the suppression hearing, Henderson testified, on direct examination by the State:

> Q.    . . . what was the reason why you actually approached the defendant that evening?
>
> A.    As we were walking, nearing the – from the – there in the 1800 block of Wellington Street, we were nearing the intersection of Wellington and Borland, which is at the end of the block.   It's a T intersection.   The road does not continue south.   As we approached there Mr. Johnson came in a green Cadillac, on the wrong side of the road, parking on the wrong side of the road and also obstructing a driveway when he parked.   And I contacted him at that time.
>
> Q.    Now as a patrol officer are you familiar with the Texas Transportation Code?
>
> A.    Yes.
>
> Q.    And what you just mentioned, are any of those things violations of the Texas Transportation Code?

---

[3]Henderson testified that Johnson was stopped for driving left of the center of the roadway, blocking the driveway, and parking more than eighteen inches from the curb.   Meeks testified that Johnson was stopped for driving on the wrong side of the roadway and parking on the wrong side of the roadway.   Both officers described the approach of Johnson as "making contact" with Johnson, rather than "stopping" Johnson.  If a trial court's ruling regarding a motion to suppress is reasonably supported by the record and is correct under any theory of law applicable to the case, the reviewing court must affirm.   *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

A.      All three.

. . . .

Q.      . . . what made it in your mind illegal?

A.      . . . . He was parked in front of – blocking the driveway and he drove left of center when it wasn't required to pass.

Meeks testified:

A.      As we're walking up the street we see the defendant's vehicle turn north on Wellington from Borland Street.  We see the vehicle driving on the left hand side of the roadway.  Pull off to the left hand side of the roadway, which would be our right hand side.  We're facing south.  So we go to contact him for driving on the wrong side of the roadway and parking on the wrong side of the roadway.

. . . .

Q.      Well, are you for sure, because you were there, that his car was parked in front of the driveway?

A.      Yes.

Meeks also testified regarding his observations upon approaching the vehicle:

Q.      And at that point who is telling the driver the reason why you guys are talking to him?

A.      Officer Henderson.

. . . .

Q.      So do you have anymore involvement at that point when you approach the vehicle, besides watching the passenger?

7

A. I'm talking to the passenger, identifying her and I'm looking at the driver at the same time. Just looking inside the vehicle from standing outside.

Q. And do you see anything in the driver – with the driver at that point?

A. Yes. I see him holding something in his left hand.

. . . .

Q. So what is it you see in the driver's hand?

A. I see a clear baggie. A large clear baggie containing multiple small green baggies.

Henderson and Meeks testified, based on their experience as certified peace officers, Johnson violated certain provisions of the Texas Transportation Code in the manner in which he operated, and ultimately parked, his vehicle. The officers' testimony establishes that Johnson parked his vehicle in front of a driveway, and this is a violation of the Code.[4] Even though Johnson disputes this testimony and claims he was in the process of backing his car into the driveway when approached, the trial court is the sole judge of witness credibility and demeanor, and found that Henderson's testimony was credible.[5] *See Guzman*, 955 S.W.2d at 89. We do not engage in our own factual review. Rather, we view the evidence and all reasonable inferences

---

[4]The record indicates that the trial court viewed State's exhibit one after the suppression hearing. This exhibit was a video from Meeks' patrol car after he brought his car to the area of the arrest. It offers a view of Johnson's parked vehicle at the time of his arrest. Exhibit one in the record of this Court is a DVD slideshow with individual photographs, some of which appear to be Johnson's vehicle. This DVD differs from the one described at trial.

[5]Johnson maintains that even if he parked in front of the driveway, his actions fall within the exception to the statute, which permits drivers to park in front of a driveway temporarily to drop off a passenger. TEX. TRANSP. CODE ANN. § 545.302(b)(1). There is no evidence in the record that Johnson's purpose in parking in front of the driveway was to drop off a passenger; accordingly, there is no proof as to the applicability of this exception.

therefrom in the light most favorable to the trial court's ruling. *Zervos v. State*, 15 S.W.3d 146, 150 (Tex. App.—Texarkana 2000, pet. ref'd).

Here, the trial court's findings are supported by the record and are also dispositive of its legal ruling. The officers had sufficient articulable facts and inferences to justify the stop of Johnson, as well as his subsequent arrest. The cocaine was in plain view of the officers as they stood outside of Johnson's vehicle. Henderson's stop of Johnson was lawful because Johnson committed a traffic violation. A seizure of an object is lawful under the plain view exception if three requirements are met. First, law enforcement officials must lawfully be where the object can be "plainly viewed." Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. And third, the officials must have the right to access the object. *Keehn v.* State, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citing *Horton v. California*, 496 U.S. 128, 136, 137 (1990)). All three requirements have been established in this case. Seizing contraband in plain view involves no invasion of privacy and is presumptively reasonable. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). "[T]he State's intrusion into a particular area cannot result in a Fourth Amendment violation unless the area is one in which there is a constitutionally protected reasonable expectation of privacy." *Id.* (quoting *New York v. Class*, 475 U.S. 106, 112 (1986)).

III. **CONCLUSION**

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:    May 26, 2011
Date Decided:     June 14, 2011

Do Not Publish