FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

PD-0072-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/24/2015 2:47:47 PM
Accepted 7/24/2015 4:14:54 PM
ABEL ACOSTA
CLERK

No. PD-0072-15

IN THE COURT OF CRIMINAL APPEALS

JAMES LEMING

Appellant,

v.

THE STATE OF TEXAS

CORRECTED APPELLANT'S RESPONSE TO STATE'S BRIEF

Clement Dunn
State Bar No. 06249300
140 East Tyler, Suite 240
Longview, Texas 75601
Telephone: 903-753-7071
Fax: 903-753-8783

ORAL ARGUMENT WAIVED

## IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of all parties to the trial court's judgment and the names and addresses of their trial and appellate counsel.

1.      Appellant:      James Leming

2.      Appellant's Trial Counsel:          Clement Dunn
                                            Attorney at Law
                                            140 E. Tyler Street, Suite 240
                                            Longview, TX 75601
                                            TSB No. 06249300

3.      Appellant's Counsel on Appeal:      Clement Dunn
                                            Attorney at Law
                                            140 E. Tyler Street, Suite 240
                                            Longview, TX 75601
                                            TSB No. 06249300

4.      Attorney for the State:             Zan Brown
                                            Assistant District Attorney, Gregg County
                                            101 East Methvin St., Suite 333
                                            Longview, Texas 75601
                                            TSB No. 03205900

                                            Lisa McMinn
                                            State Prosecuting Attorney
                                            PO Box 13046
                                            Austin, TX 78711-3046
                                            TSB No. 13803300

I.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

GROUND FOR REVIEW NUMBER ONE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW NUMBER TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

GROUND FOR REVIEW NUMBER THREE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF WORD COUNT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# INDEX OF AUTHORITIES

## Cases

Hernandez v. State, 983 S.W. 2d 867(Tex. App.–Austin 1998, no writ history). . . . . . . . . . *4*

Atkinson v. State, 848 S.W. 2d 813, 815(Tex. App.–Houston(14th Dist.)1993, writ ref'd) . *4*

Fowler v. State, 266 S.W. 3d 498(Tex. App–FortWorth 2008, writ ref'd). . . . . . . . . . . . . . *4*

Aviles v. State, 23 S.W. 3d 74,77(Tex. App.–Houston(14th District)2000, pet. Ref'd). . . . . *4*

State v. Cerny, S.W. 3d 796,800(Tex. App.–Corpus Christi 2000, no pet.). . . . . . . . . . . . . *4*

Ehrhart v. State, 9 S.W. 3d 929,930(Tex. App–Beaumont 2000). . . . . . . . . . . . . . . . . . . . *4*

Bass v. State, 64 S.W. 3d 646,651(Tex. App. –Texarkana 2001, pet. ref'd).. . . . . . . . . . . . *4*

Navarette v. California, 134 S. Ct. 1683(2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

Illinois v. Gates, 462 U.S. 2d3(1983)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

Rachel v. State, 917 S.W. 2d 799, 809 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . . . . *6*

Wright v. State, 7 S.W. 3d 148, 151 (Tex. Crim. App. 1911). . . . . . . . . . . . . . . . . . . . . . . . *9*

## Statutes and Codes

Section 12.42(a), Texas Penal Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

Section 545.060(a), Texas Transportation Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

## Constitutional Provisions

Article 37.07, Section 3(a)(1), V.A.C.C.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

NO. PD-0072-15

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JAMES LEMING                                                    Appellant

V.

THE STATE OF TEXAS                                             Appellee

* * * * *

**CORRECTED APPELLANT'S RESPONSE TO STATE'S BRIEF**

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes Now the Appellant, by and through his attorney, Clement Dunn and respectfully submits the following in Corrected Response to the State's Brief on Petition for Discretionary Review.

**STATEMENT OF FACTS**

Offense:         Driving While Intoxicated Third or More

Verdict:         Guilty; Ten (10) years confinement - Texas Department of Criminal Justice - Institutional Division

Date of Verdict:         October 14, 2013

Trial Court:    124th District Court, Gregg County, Texas.

This case involves a prosecution for Driving While Intoxicated-Subsequent Offense; Repetition of a Felony. R.R.4, at 6. This constitutes a second degree felony. Id.; see also: Section 12.42(a), Texas Penal Code. The Trial Court conducted a hearing on the Appellant's Motion to Suppress on December 17, 2012. R.R. 2. After the Trial Court overruled the Appellant's Motion to Suppress, on January 13, 2013, C.R., at 13, the Appellant entered a plea

of guilty to the Trial Court. R.R.4. This occurred as an "open plea," without a plea agreement, and, following a hearing on sentencing, the Trial Court imposed a sentence of ten years' confinement. R.R.6, at 48. The Trial Court sentenced the Appellant on October 14, 2013. R.R.7.

## STATE'S GROUND FOR REVIEW NUMBER ONE

### SUMMARY OF THE ARGUMENT

The State's proposed interpretation of Section 545.060(a), Texas Transportation Code, runs afoul of both logic and law. The Court of Appeals has correctly interpreted this statute.

### ARGUMENT

Section 545.060(a), Texas Transportation Code, provides:

> Sec. 545.060.  DRIVING ON ROADWAY LANED FOR TRAFFIC.
> (a)  An operator on a roadway divided into two or more clearly marked lanes for traffic:
> (1)  shall drive as nearly as practical entirely within a single lane;  and
> (2)  may not move from the lane unless that movement can be made safely.

The State, in its Brief, asserts that this statute comprises two requirements, "that a driver remain in one lane if it is practical to do so," and "that any departure from the lane be done safely." State's Brief, at 3. The State avers: "Failure to abide by either provision is a violation." Id.

This reading of the statute leads to illogical ends. The State concludes, "When subsections (1) and (2) are read together, the statute requires a driver to remain entirely in a single lane as nearly as is sensible or reasonable to do so but, if it is reasonable or sensible to deviate, the operator must do so safely." State's Brief, at 7. Examples of "sensible" or "reasonable" deviation the State suggests would be avoidance of turtles, potholes, and bicycles. In the case of a "slow-moving bicycle," the State asserts: "Under those circumstances, it is reasonable (or practical) to pass, by either leaving the lane entirely or

Appellant's Response to State's Brief, LEMING    2

moving partially into another lane until the pass is completed." Id.

The State's interpretation of Section 545.060(a)(1) would <u>require</u> a driver to stay in a single lane <u>unless</u> it becomes "impractical" to do so. Besides departing significantly from the plain language of the statute, this reading leads to results at odds with law and logic alike. This interpretation would also lend vagueness and ambiguity to an otherwise straightforward statute.

The law contains no <u>per se</u>, or "across the board," prohibition of a driver changing lanes. A prudent, reasonable, safe driver may change lanes for innumerable reasons even in the course of a single journey of only a few minutes in today's urban traffic. These may include passing slower cars, yielding to faster cars, keeping a safe distance from other vehicles ( into an open lane, for instance, to avoid following too closely), yielding to oncoming traffic, leaving additional space between one's own vehicle and wide loads or trucks that fill an entire lane, improving one's visibility, getting in the proper lane for an exit that may still be some distance ahead. This list could go on and on–as does the flow of traffic on the streets and highways of Texas, many of which rank as some of the most heavily traveled in the nation. Yet, the State's argument would confine the driver to a single lane–unless this became "impractical." Every driver changing lanes under this interpretation would bear a burden of explaining the "impracticality" that <u>necessitated</u> the change of lanes.[1]

The State's interpretation of Article 545.060(a)(1) also leads to ambiguity. What standard would determine when the failure to drive "as nearly as practical entirely within a single lane" fell within the realm of the "sensible" or "reasonable?" From whose perspective would this be assessed or analyzed? A hypothetical "reasonable" driver in those circumstances, or that driver in particular? Avoiding the glare of the sun, the exhaust from

---

[1] The State's view would require an objective, identifiable "impracticality" as a condition precedent for any deviation or change from a single lane–even if completely safe and regardless of the degree of the deviation or change.

Appellant's Response to State's Brief, LEMING     3

the vehicle in front, the traffic from the mall ahead–which of these are "reasons" to change lanes that, as has been queried in Fourth Amendment jurisprudence, society is proposed to recognize as reasonable? What begins as ambiguity leads quickly to absurdity and vagueness. Under the State's interpretation of this statute, probable cause would exist for law enforcement to stop a driver for leaving "a single lane."–either completely or partially–simply because it was "practical" not to have done so.[2]

In contrast with the State's approach, the appellate judiciary in Texas has consistently and logically reached a different conclusion. Section 545.060(a), according to the jurisprudence that has developed over a period of years creates one offense: moving out of a marked lane when it is not safe to do so. See, e.g., Hernandez v. State, 983 S.W. 2d 867(Tex. App.–Austin 1998, no writ history); Atkinson v. State, 848 S.W. 2d 813, 815(Tex. App.–Houston(14th Dist.)1993, writ ref'd); Fowler v. State, 266 S.W. 3d 498(Tex. App–FortWorth 2008, writ ref'd); Aviles v. State, 23 S.W. 3d 74,77(Tex. App.–Houston(14th District)2000, pet. Ref'd); State v. Cerny, S.W. 3d 796,800(Tex. App.–Corpus Christi 2000, no pet.); Ehrhart v. State, 9 S.W. 3d 929,930(Tex. App–Beaumont 2000); and Bass v. State, 64 S.W. 3d 646,651(Tex. App. –Texarkana 2001, pet. ref'd). In each of these cases the appellate courts arrived at conclusions consistent with the interpretation of this statute set forth above: a violation occurs only by a driver moving out of a marked lane when it is not safe to do so.

------

[2]To the degree the State wants to infer a legislative intent re swerving, straddling, etc., other statutes furnish a much more direct and effective set of tools: statutes proscribing reckless driving, failing to yield right of way, and rules regarding turns represent but a few of many examples.

**SUMMARY OF THE ARGUMENT**

The telephone call mentioned at the suppression hearing provided an insufficient basis for the stop.

**ARGUMENT**

The Court of Appeals correctly found that the telephone call the State mentioned at the hearing on the Appellant's motion to suppress did not involve "anyone more believable than an anonymous caller." Opinion, at 8. The Court of Appeals correctly observed:

> Although the State's questioning of Gilow and its closing argument at trial asserted that the caller gave his name and contact information, that information (other than the name "Arliss") was not developed or presented at the suppression hearing. There was no evidence presented that would have given Gilow any reason to attribute credibility to the caller.

The Court of Appeals observed: "A tip from an anonymous caller, standing alone, rarely supplies reasonable suspicion for a stop because it lacks "sufficient indicia of reliability." Opinion, at 8 (citations omitted).

Yet, the State asserts this "tip" contained some indicia of reliability, as found in the United States Supreme Court's opinion in Navarette v. California, 134 S. Ct. 1683(2014), in which an anonymous 911 caller identified the make, license plate, and location of a truck that had nearly run the caller off the road. See: State's Brief, at 10. The factors present in Navarette, however, become notably absent when compared to the instant case.

The report in Navarette involved "(An informant's) explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." State's Brief, at 10, citing Navarette, 134 S. Ct. At 1689, quoting Illinois v. Gates, 462 U.S. 2d3(1983). The caller and

the "information" in the instant case differ markedly from this. In this case, the Appellant's vehicle was traveling on a city street in plain and public view. No dramatic "wrongdoing" of the kind at issue in <u>Navarette</u> had occurred; none had been alleged or reported from any source. Instead, when the officer did locate the car the Appellant was driving, nothing observed involved any violation of law–no "wrongdoing." Hence, this most critical aspect of the "tip" was <u>not</u> corroborated..

In the absence of "contemporaneous reports of criminal activity made under the stress of excitement," State's Brief, at 10, a tip loses these indicia of credibility. Nothing in the record indicates the caller acted under the "stress of excitement" arising from "criminal activity." As just noted, no observations corroborated or found any violation of law associated with the reported "swerving." This was all the caller alleged–the record contains no mention of anything approaching a stressful event, criminal or otherwise.

The State emphasizes that the call in the instant case was a "911" call: " And fourth, use of the 911 system provided further proof of the caller's veracity." State's Brief, at 10. From this the State argues that the "tip" in the instant case resembles the call at issue in <u>Navarette</u>, <u>supra</u>. State's Brief, at 10-11. The State also draws attention to this "reliable 911 report" in urging its third ground of error (discussed <u>infra</u>)–that "reasonable suspicion" justified the stop–asserting, as here, that a "911" call carries inherent reliability.

The Appellant respectfully submits: Nowhere does the record of the hearing on the motion to suppress[3] show that this "tip" came through a "911" call, or the "911 system." In fact, the record of the hearing on the motion to suppress does not clearly establish how the "tip" came to the police:

---

[3]As the Court of Appeals noted in the instant case: "In reviewing the trial court's ruling on the motion to suppress, we will only consider evidence before the trial court at the suppression hearing." Opinion, at 2, n. 2, citing <u>Rachel v. State</u>, 917 S.W. 2d 799, 809 (Tex. Crim. App. 1996).

Q.    All right. I want to talk about the circumstances surrounding that stop. How were you first dispatched to contact Mr. Leming?

A.    I was dispatched - - the call came in that a - - the reporting party was behind the vehicle and the vehicle was swerving from side to side. And it was called in this way.

Q.    Did the reporting party give their name and phone number?

A.    Yes, they did.

Q.    Okay. And what is that reporting party's name?

A.    Arliss.

Q.    Is that A-R-L-I-S-S?

A.    Yes.

Q.    Okay. At this point, you have a reporting party who says there's a car swerving. Did you get a description of the car?

A.    Yes.

Q.    And what was that description?

A.    An older-style white jeep.

Q.    Did you then proceed to the location where that car was–

A.    Yes. The RP was continuously following. And I worked my way up to McCann and te Loop. And when I turned on McCann, I advised the reporting party to back off, and I went behind the vehicle and started my observation.

R.R. 2, at 7. This record does not even specify that the "report" came over a telephone at all. When the officer describes "the call came in," and "it was called in that way," he never clarifies whether he is referring to a call into the police department or the call from the dispatcher to the officer. Never does the officer articulate how any call into the department was made or received. No other evidence at the hearing offered any explanation or details of the means of the making or receiving of this "call." At a minimum, nothing showed that this was a "911" call.

In the absence of any showing of a "911" call, and where the observation (including the video) failed to corroborate the information from "the tip," this scenario differs greatly from that in <u>Navarette</u>, <u>supra</u>. This "tip" did not justify the stop. The Court of Appeals reached the correct conclusion. Opinion, at 8-9.

**STATE'S GROUND FOR REVIEW NUMBER THREE**

**SUMMARY OF THE ARGUMENT**

The traffic stop in the instant case finds no justification in the jurisprudence of "reasonable suspicion."

**ARGUMENT**

In its third ground for review, the State seeks to justify the stop in the instant case on the basis of "reasonable suspicion of DWI." State's Brief, at 11-15. Here, the State focuses primarily on the assertion that the Appellant was "weaving" as he drove. The Appellant respectfully submits that this provided no basis for a stop of the vehicle.

As the Court of Appeals correctly observed, no evidence of the Appellant's alleged "swerving" amounted to a traffic violation. Opinion, at 9 ("No traffic violation having occurred..."). The State, in the absence of a traffic violation, nonetheless asserts that "Arliss' report and the officer's observations was sufficient to provide reasonable suspicion of driving while intoxicated." State's Brief, at 11-12. [4]

The State argues that "weaving" amounts to "something so obvious and commonplace" that the expertise of an officer becomes superfluous in both its detection and attribution of significance to it. State's Brief, at 12-13. Citing cases that allow a "lay witness" to be competent to give an opinion about "intoxication"–that is, simply whether or not a person is "intoxicated," without the involvement of a vehicle at all–the State argues that a

---

[4]Significantly, the State emphasizes the "tip" as a basis for reasonable suspicion. Throughout its Brief, the State refers to this "tip" as a "911" call, and repeatedly asserts that this adds to its reliability. As the Appellant has demonstrated, there exists no basis to classify tis "tip" as coming via "911."

Appellant's Response to State's Brief, LEMING      8

"lay witness" can, by analogy, glean from seeing a vehicle "weaving" that the driver is intoxicated. Id., at 13. But in the instant case the officer could not and did not corroborate what the "lay witness" had allegedly reported: the "swerving from side to side" in fact appeared as only a "drift" or "movement," primarily within its own lane, not amounting to a violation of any traffic law. Opinion, at 9.

The State next mentions "time of day" and "location near bars" as factors in developing "reasonable suspicion," i.e., "to find that bad driving allows reasonable suspicion of intoxication." State's Brief, at 13. These factors have no relevance to the instant case, however. The Appellant was stopped "about 2:00pm," "in the middle of Longview, Texas, on a well-traveled thoroughfare." Opinion, at 2,13. This differs considerably from "Austin's Sixth Street bar district late at night," which the State inserts into its argument. State's Brief, at 14. At a minimum, these factors of time and location add nothing–if anything, subtract significantly–from any calculation of reasonable suspicion in the instant case.

The Court of Appeals set out the known observations of the Appellant's driving:

> At most, the vehicle may have crossed the lane lines into the next (inside) lane, but this happened when no other cars were in the immediate vicinity. Gilow continued to follow and observe Leming almost two more minutes after this initial observation. In that time, although Leming truck is observed to drift or swerve within his lane of traffic, we cannot say that this is an indication of distress. Although Leming's truck is observed to approach the curb on the right-hand side of the lane of traffic, it is not observed being close to hitting or riding up the curb. Also, Leming observes traffic laws by coming to a complete stop at a stop light; there was nothing indicating distress in that stop or the subsequent move forward with traffic.

Opinion, at 13. The Court of Appeals rejected the State's argument that these facts could justify the stop on the basis of "community care-taking." Id., at 13-14.

In its initial Petition for Discretionary Review, the State explicitly stated it is not challenging the Court of Appeals' rejection of the State's argument seeking to justify the stop

on the basis of a "community care-taking" function on direct appeal. State's Petition, at 4, n. 1 ("The State does not challenge the Court of Appeals' determination that community care-taking was not shown.") The Court of Appeals described this function: "As a part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person–given the totality of the circumstances–would believe is in need of help." Wright v. State, 7 S.W. 3d 148, 151 (Tex. Crim. App. 1911). Opinion, at 9. Since the gravamen of intoxication is "impairment," and since a visibly "impaired" person would be "in need of help," it becomes difficult to see how "reasonable suspicion" could justify the stop when "community care-taking" could not. (Respectfully, this seem especially true given the State's rhetoric about the obviousness of intoxication generally. State's Brief, at 12-13.) Certainly, the facts addressed in the record fail to justify a stop, regardless of the theory advanced.

## PRAYER

The Appellant respectfully requests that this Honorable Court affirm the holding of the Sixth Court of Appeals in this case.

Respectfully submitted,

___//ss//___Clement Dunn_____
State Bar No. 06249300
140 East Tyler, Suite 240
Longview, Texas 75601
Telephone: 903-753-7071
Fax: 903-753-8783

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Corrected Appellant's Response to State's Brief was delivered to the Gregg County District Attorney's Office, Gregg, Texas on this 24th day of July 2015.

___//ss//___Clement Dunn_____

## CERTIFICATE OF WORD COUNT

I hereby certify that a total of 3441  words are included in this Corrected Appellant's Response to State's Brief.

___//ss//___Clement Dunn_____